## JULIO BURGOS-TORRES *v.* COMMISSIONER
## OF CORRECTION
## (AC 33685)

DiPentima, C. J., and Sheldon and Flynn, Js.

Argued January 17—officially released May 14, 2013

*Mark M. Rembish*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Julio Burgos-Torres, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and that the denial of his petition for a writ of habeas corpus was improper because his trial counsel (1) was burdened by an actual conflict of interest and (2) failed to present an alibi defense. We dismiss the appeal.

The petitioner's conviction was the subject of a direct appeal. See *State* v. *Burgos-Torres*, 114 Conn. App. 112, 968 A.2d 476, cert. denied, 293 Conn. 908, 978 A.2d 1111 (2009). In affirming the petitioner's conviction, this court recited the following relevant facts: "The [petitioner] was upset that the victim, Jesus Gonzalez, had been selling drugs in the [petitioner's] territory. A person whom the [petitioner] used as a runner for his drugs spoke with the victim, and the victim asked the runner to relay a vulgar insult to the [petitioner]. Angry over the insulting message from the victim, the [petitioner] demanded an apology, and he enlisted the assistance of Luis Gonzalez to contact the victim. After the

victim apologized to the [petitioner] via the telephone, the [petitioner] demanded a face-to-face apology. Luis Gonzalez, while in the company of [Michael A.] Munoz, picked up the victim, who was waiting outside the rear of Dorado's Cafe in Waterbury, and drove him to Munoz' home, which was nearby on Granite Street. After arriving at Munoz' home, the victim telephoned the [petitioner] to tell him that he was at Munoz' home if he wanted a face-to-face apology. The victim, Munoz and Luis Gonzalez waited outside for the [petitioner] to arrive. Munoz' wife and children were in the backyard. The victim and the [petitioner] exchanged words, and the victim, again, apologized to the [petitioner]. The [petitioner] told the victim that the victim had been selling drugs in the [petitioner's] territory, and the victim offered another apology. The exchange between the [petitioner] and the victim became more heated and some obscenities were exchanged. The victim told the [petitioner] that he had apologized and that there was nothing else he could do. The [petitioner] then pulled a gun from his waistband, pointed it at the victim's chest and repeatedly shot him, before turning and running away. Munoz' wife telephoned 911, and Munoz stayed with the victim until the police arrived. Both Luis Gonzalez and Munoz positively identified the [petitioner] as the murderer.

"The [petitioner] was arrested and charged with criminal possession of a firearm [in violation of General Statutes § 53a-217 (a) (1)] and murder [in violation of General Statutes § 53a-54a (a)]. After a trial, the jury found that on July 18, 2005, the [petitioner] criminally possessed a firearm and, with the intent to cause the death of another person, murdered the victim. After accepting the jury's verdict, the court sentenced the [petitioner] to sixty years imprisonment on the murder conviction and five years, consecutive, for the criminal

possession of a firearm conviction for a total effective sentence of sixty-five years incarceration." Id., 114–15.

On April 7, 2011, the petitioner filed the operative amended habeas corpus petition alleging that his trial counsel, attorney Martin Minnella, provided ineffective assistance because (1) an actual conflict of interest existed between Minnella and Munoz that prevented the petitioner from receiving effective assistance of counsel; and (2) Minnella failed to call a witness to present an alibi defense demonstrating "that the petitioner was not at the scene of the crime at the time of the murder." Following the habeas trial, the court, *Schuman, J.*, denied the petition for a writ of habeas corpus and subsequently denied the petition for certification to appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and that the court erroneously rejected his claims that he received ineffective assistance of trial counsel. We are not persuaded.

As an initial matter, we set forth the standard of review relevant to our resolution of this appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for

certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Rosado* v. *Commissioner of Correction*, 129 Conn. App. 368, 371–72, 20 A.3d 85, cert. denied, 302 Conn. 916, 27 A.3d 368 (2011).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the

adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citation omitted; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 429–30, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 294–95, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Orellana* v. *Commissioner of Correction*, 135 Conn. App. 90, 98, 41 A.3d 1088, cert. denied, 305 Conn. 913, 45 A.3d 97 (2012).

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks

omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 128 Conn. App. 430.

Accordingly, in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, we must consider the merits of the petitioner's underlying claim that Minnella provided ineffective assistance. With the foregoing principles in mind, we now address the petitioner's claims in turn.

I

The petitioner claims first that Minnella provided ineffective assistance because an actual conflict of interest existed between Minnella and Munoz. Specifically, the petitioner contends that because Minnella or, alternatively, assistant state's attorney John Davenport, a past member of Minnella's law firm, previously had represented Munoz, Minnella was burdened by an actual conflict of interest, which prevented him from effectively cross-examining Munoz at the petitioner's probable cause hearing.[1] According to the petitioner, Minnella "was ineffective for not disclosing [the conflict of interest] to him and withdrawing from the case prior to the probable cause hearing and certainly prior to the trial," and these failures purportedly prejudiced him because "another attorney would have effectively cross-examined Munoz at the probable cause hearing and

---

[1] Although the petitioner also alleges that Minnella adversely was affected by his prior representation of Munoz because he failed to pursue a theory that Munoz was the shooter instead of the petitioner, he did not raise that claim in his amended petition or during the habeas trial. "We do not entertain claims not raised before the habeas court but raised for the first time on appeal." *Bertotti* v. *Commissioner of Correction*, 136 Conn. App. 398, 404, 44 A.3d 892, cert. denied, 307 Conn. 901, 53 A.3d 217 (2012). Accordingly, in resolving the petitioner's ineffective assistance of counsel claim regarding Minnella's alleged conflict of interest, we confine our review to the question of whether Minnella's cross-examination of Munoz was impaired or compromised.

pursued the petitioner's defense vigorously . . . ."
We disagree.

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Day* v. *Commissioner of Correction*, 118 Conn. App. 130, 136–37, 983 A.2d 869 (2009), cert. denied, 294 Conn. 930, 986 A.2d 1055 (2010).

"The [United States Court of Appeals for the Second Circuit] has honed this test further. Once a [petitioner] has established that there is an actual conflict, he must show that a lapse of representation . . . resulted from the conflict. . . . To prove a lapse of representation, a [petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 584, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005).

"An actual conflict of interest is more than a theoretical conflict. The United States Supreme Court has cautioned that the possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a *potential* conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough. . . . If a petitioner fails to meet that standard, for example, where only a potential conflict of interest has been established, prejudice will not be presumed, and the familiar *Strickland* prongs will apply." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 550, 15 A.3d 658, cert. granted on other grounds, 301 Conn. 921, 22 A.3d 1280 (2011).

Regarding his claim that Minnella previously represented Munoz, the petitioner bases his ineffective assistance claim on the assertion that other testimony adduced before the habeas court and at the probable cause hearing contradicted Minnella's testimony at the habeas trial.

"As an appellate court, we do not reevaluate the credibility of testimony, nor will we do so in this case. The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . This court does not retry the case or evaluate the credibility of witnesses. Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct,

demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction,* 133 Conn. App. 310, 316–17, 34 A.3d 1046 (2012).

At the habeas trial, Minnella testified, inter alia, that he previously had not represented Munoz. He further indicated that his office conducted conflict checks at the time of the petitioner's criminal trial and again before the habeas trial. Minnella testified that on both occasions, the checks did not reveal that he had represented Munoz in any prior matter.[2] In rejecting the petitioner's ineffective assistance claim against Minnella, the habeas court specifically credited Minnella's testimony as credible and found that, "[t]he petitioner's claim thus lacks a factual basis." The habeas court further found that "[t]he transcript of the hearing in probable cause, upon which the petitioner relies, reveals only that Munoz knew that Minnella was in practice with attorney Timothy [Moynahan], but does not clearly establish that Minnella actually represented Munoz in the past." The following is an excerpt from the relevant portion of the transcript of the probable cause hearing:

"[Attorney Davenport]: And we talked about many things, including back when, years ago, Mr. Minnella was your lawyer?

"[Munoz]: I remember Mr. Minnella being with Moynahan, yes.

"[Attorney Davenport]: And you also remembered me being in that law firm, years ago?

"[Munoz]: Yes."

---

[2] The following colloquy occurred between the counsel for the respondent, the commissioner of correction, and Minnella at the habeas trial:

"[The Respondent's Counsel]: [During the conflict checks] did the name Mike Munoz come up as a prior client of your firm?

"[The Witness]: Not anybody that I represented or was involved with at all."

It is clear, therefore, that as to the petitioner's claim that Minnella previously had represented Munoz, the habeas court's conclusion that no actual conflict existed was based upon a credibility determination, which we will not disturb on appeal. *Corbett* v. *Commissioner of Correction*, supra, 133 Conn. App. 316–17. On the basis of the record, we agree with the habeas court that the petitioner has failed to present evidence establishing that Minnella "actively represented conflicting interests . . . ." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, supra, 127 Conn. App. 549. As such, the petitioner has not demonstrated a violation of his right to counsel predicated on an actual conflict of interest.

The habeas court further rejected the petitioner's claim that Davenport, as a past member of Minnella's firm, previously had represented Munoz, resulting in an actual conflict of interest, which was imputed to Minnella as the petitioner's attorney.[3] The habeas court determined that the "petitioner does not even attempt to meet [the] fact-specific showing [required to demonstrate an actual conflict of interest]." The habeas court found that, "[t]he transcript reveals that [Minnella] thoroughly and vigorously cross-examined Munoz at the probable cause hearing and trial," and further found that there is no evidence that Minnella's performance

[3] During closing arguments, the habeas court stated that, the petitioner failed to "either [allege] or brief that claim." After the habeas trial, the court stated in its memorandum of decision that "[t]he court gave the parties one week . . . to file supplemental briefs on the issue. The petitioner did not file a brief within that time period and still has not done so. As a result, the petitioner has not advanced any reason why he did not investigate this claim before trial." In its written memorandum of decision, the court stated that "the petitioner's motion to amend the petition is denied." Because, however, the habeas court also considered the merits of the petitioner's claim regarding Davenport, we will address the merits of that claim. *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 640, 930 A.2d 58 (our review on appeal limited to matters in record and issues decided by trial court), cert. denied, 284 Conn. 939, 937 A.2d 695 (2007).

was impaired or compromised as a result "of loyalty to Munoz as a putative former client of his firm." Indeed, the habeas court noted that, "[d]uring summation, Minnella described Munoz as an 'admitted perjurer' . . . ." We agree with the habeas court.

"We have had occasion to point out the caution from the United States Supreme Court that the *possibility* of conflict is insufficient to impugn a criminal conviction." (Emphasis in original; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 350, 27 A.3d 404 (2011), cert. granted on other grounds, 304 Conn. 911, 40 A.3d 318 (2012).

On appeal, the petitioner merely speculates as to the possibility that Minnella compromised the petitioner's interests. He argues that Minnella did not fully and effectively cross-examine Munoz. Specifically, the petitioner claims that, "[i]t is likely that had attorney Minnella done his due diligence in representing the petitioner effectively and spoken to Munoz prior to the [probable cause] hearing, he would have been in a position to realize there was a conflict. In addition, he would have been able to effectively cross-examine him at the probable cause hearing because he would have learned that Munoz gave a false statement to the police which falsely implicated the petitioner as being involved in the murder." The petitioner has not pointed to a scintilla of evidence in the record to support his assertions or to indicate that Minnella did not adequately cross-examine Munoz. Because he has failed to offer any evidence in support of his claim, the petitioner has failed to undermine the habeas court's factual finding that "Minnella thoroughly and vigorously cross-examined Munoz at the probable cause hearing and the trial." Accordingly, the petitioner has failed to allege anything more than a mere theoretical division of loyalties, which

is insufficient to demonstrate an actual conflict of interest. See *Santiago* v. *Commissioner of Correction,* supra, 87 Conn. App. 585.

II

The petitioner next claims that the habeas court erred in concluding that Minnella was not ineffective for failing to call Alberto Cruz, the petitioner's friend who allegedly was with him at the time of the incident, as an alibi witness at trial. We are not persuaded.

"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction,* 129 Conn. App. 699, 703, 21 A.3d 901, cert. denied, 302 Conn. 921, 28 A.3d 342 (2011).

Concluding that "[t]here is no basis for this claim of ineffective assistance of counsel," the habeas court credited the testimony of Minnella at the habeas trial. Minnella testified that the petitioner never informed him that Cruz could provide a possible alibi defense and that he did not learn about Cruz until one week before the habeas trial. Minnella testified that, instead,

prior to the criminal trial, the petitioner had told Minnella that his girlfriend could provide him with an alibi defense. Minnella testified that an investigation, conducted before the criminal trial, revealed that on the night of the incident, the petitioner's girlfriend had been working about twenty miles from the scene of the incident.

In contrast, the petitioner testified that he never told Minnella that he had been with his girlfriend at the time of the incident. The petitioner claimed that, before his criminal trial, he had informed Minnella "[a] hundred times" that he had been with Cruz for the entire day on which the victim was murdered and that Cruz had attempted to contact Minnella "[m]ore than ten times" to inform him that he could provide an alibi defense. Cruz, however, testified that he never attempted to contact Minnella to reveal that he was an alibi witness for the petitioner.[4]

The habeas court found that the petitioner's testimony at the habeas trial was "completely unworthy of belief." The habeas court further found that the petitioner did not raise the issue of Minnella's failure to call Cruz either in his motion to discharge Minnella, which he filed after the jury verdict, or in his original pro se habeas petition. Accordingly, concluded the habeas court, "the only logical explanation for all these circumstances is that the petitioner has manufactured his alibi defense for purposes of the habeas trial."

"This court does not retry the case or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction*, supra, 133 Conn. App. 317. On the basis of the testimony and evidence presented at the habeas trial, we conclude that the habeas court reasonably could have found that

---

[4] At the habeas trial, Cruz did testify, however, that he was with the petitioner at the time of the incident "drinking, talking and washing cars."

the petitioner did not inform Minnella that Cruz could provide an alibi defense. Accordingly, we agree with the habeas court that the petitioner failed to demonstrate that Minnella's performance was deficient and further conclude that the petitioner's claim fails under the first prong of *Strickland*.

On the basis of the foregoing, this court concludes that the petitioner has not demonstrated that any issue raised with regard to the court's denial of his petition for a writ of habeas corpus is debatable among jurists of reason, that a court could resolve any such issue in a different manner or that any question raised deserves encouragement to proceed further. Having failed to satisfy any of these criteria, the petitioner cannot demonstrate that the court abused its discretion in denying the petition for certification to appeal. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion the other judges concurred.